**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL WELFARE FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and CATHERINE WENSKUS, not individually, but as Administrator of the Funds,** | ) | |
| | ) | **Case No. 25 C 4665** |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | |
| **T CAT ENTERPRISE, INC., an Illinois corporation,** | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

NOW COMES Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund, Chicago & Vicinity Laborers' District Council Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, Administrator of the Funds (collectively the "Funds"), by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska and Sara S. Schumann for their Complaint against Defendant T CAT Enterprise, Inc., an Illinois corporation:

**FACTS COMMON TO ALL COUNTS**

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2),

and 28 U.S.C. §1391 (a) and (b).

3. Plaintiffs the Funds are multiemployer Trusts established pursuant to Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds maintain their respective Plans, which are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. § 1002(3) and 37(A), pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General Laborers' District Council of Chicago & Vicinity (the "Union") for the Ancillary Funds, the Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Union. With respect to such matters, Wenskus is a fiduciary of Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant T CAT Enterprise, Inc. (herein referred to as the "Company"), is an Illinois corporation that conducts business within this District and was, at all times, relevant to this cause, an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. The Union is a labor organization within the meaning of 29 U.S.C. 158(a). The Union and Company are parties to a Collective Bargaining Agreement (the "CBA" or "Agreement"), at all times relevant, and at least since, May 5, 2021. Exhibit A that is attached hereto is a true and accurate copy of Company's "Memorandum" Agreement entered into between

the Union and Company that adopts and incorporates the Joint Agreements between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust (the Memorandum and the Joint Agreements are collectively referred to as the "Agreement" or the "CBA").

7. The Funds have been duly authorized by the Union to act as an agent in the collection of contributions due to its Training Fund, and to the Ancillary Funds (also sometimes referred to as "Industry Funds"), including the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council ("Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Builders Association ("BAC"), Chicago Area Independent Construction Association ("CAICA"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Industry Advancement Fund ("IAF"), and the Laborers' District Council Labor Management Committee Cooperative ("LDCLMMC").

8. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, welfare benefits, retiree welfare benefits and for its Training and Ancillary Funds and to submit monthly remittance reports in which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Per the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages at ten (10) percent, and interest is assessed at twelve (12) percent from the date the contribution is untimely and until the amount is paid.

9. The Pension, Welfare, and Retiree Health and Welfare Declarations of Trust and Agreements provide the Trustees with the powers to formulate, establish and maintain collection

procedures for collection of contributions and that those actions, procedures and polices shall be binding upon all Contributing Employers.

10. The Funds' Amended and Restated Collection Policies and Procedures provide that in the event the Funds file suit against a Contributing Employer, any liquidated damages incurred by the Contributing Employer thereafter will be assessed liquidated damages at the rate of twenty percent (20%) of the contributions owed. This Collection Policy was adopted by the respective Trustees for the Pension, Welfare, and Retiree Health and Welfare Funds.

11. The CBA provides that in the event the Trustees refer an account to legal counsel for collection of delinquent fringe benefit contributions the delinquent employer shall be liable for the Funds' reasonable attorneys' fees, audit costs, interest and filing costs incurred in the collection process.

12. The Funds' Collection Policy provides that any delinquent contributions owed by a Contributing Employer shall bear interest in the amount of twelve percent (12%) per annum, compounded from the due date until the obligation is fully satisfied.

13. In addition to fringe benefit reports, the CBA obligates the Company to submit and pay Dues Reports. The Company is required to deduct from the wages of employees covered by said contract working dues in the amount of three and three-quarter percent (3.75%) of gross wages and to remit those amounts monthly to the Union office of the sums so deducted.

14. The CBA also requires the Company to pay contributions to the Ancillary Funds (sometimes called "Industry Funds"). These contributions are paid as part of the Dues Reports. The CBA requires that Company pay eight cents ($.08) for each hour worked by employees covered by the CBA to CAICA, seven cents ($.07) for each hour to LECET, and seventeen cents ($.17) per hour to the LDCLMCC. Thus, the total Industry Fund contribution is thirty-two cents

($.32) per hour.

15. Dues Reports and contributions are due by the 10th day following the month in which the work was performed. Dues Reports and contributions which are not submitted in a timely fashion are assessed liquidated damages at the rate of ten percent (10%) of the reported amount.

16. Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

17. The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

18. Company received a written demand that it pay amounts found due and owing per a compliance audit conducted by the independent auditing firm of Richard J. Wolf and Company ("Wolf"), covering the period of May 5, 2021 through March 31, 2022 ("Audit"), as well as demands were made for Company to become current on its ongoing monthly obligations to report and pay the Funds for the as yet unaudited period from April 1, 2022 to present.

19. The Agreement further obligates Company to obtain and maintain a surety bond to insure future wages, pension and welfare contributions, and the Company has failed to obtain and maintain a surety bond.

**COUNT I**
**(Failure to Pay Amounts Owed Per Wolf Audit)**

20. Plaintiffs re-allege paragraphs 1 through 19 as if fully set forth herein.

21. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Wolf Audit of Company's books and records

for the audit period, covering May 5, 2021 through March 31, 2022, reflects that the Company performed covered work, but has:

(a) failed to report and pay contributions in the amount of $4,133.51 owed to Plaintiff Chicago & Vicinity Laborers' District Council Pension Fund for the audit period of May 5, 2021 through March 31, 2022, thereby depriving the Pension Fund of contributions, income and information needed to administer that Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to report and pay contributions in the amount of $3,175.30 owed to Plaintiff Chicago & Vicinity Laborers' District Council Welfare Fund for the audit period of May 5, 2021 through March 31, 2022, thereby depriving the Welfare Fund of contributions, income and information needed to administer that Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to report and pay contributions in the amount of $1,475.25 owed to Laborers' District Council Retiree Health and Welfare Fund for the audit period of May 5, 2021 through March 31, 2022, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to administer that Fund and jeopardizing the retiree health and welfare benefits of the participants and beneficiaries;

(d) failed to report and pay contributions in the amount of $252.90 owed to the Training Fund for the audit period of May 5, 2021 through March 31, 2022, thereby depriving the Training Fund of contributions, income and information needed to administer that Fund and jeopardizing the benefits of the participants and beneficiaries;

(e) failed to report and pay contributions in the amount of $64.00 owed to Laborers' Ancillary Funds: LECET, LDCLMCC and CAICA for the audit period of May 5, 2021 through

March 31, 2022, thereby depriving those Ancillary Funds of contributions, income and information needed to administer those funds and jeopardizing the benefits of the participants and beneficiaries; and

(f) failed to obtain and maintain a surety bond.

True and accurate copies of the Wolf Audit, with demand for payment and Summary Report of amounts owed is attached hereto as Exhibits B.

22. Under the terms of the Agreements and the Funds' respective Agreements and Declarations of Trust, Company owes liquidated damages, accumulative liquidated damages, plus interest on all of the unpaid contributions, and untimely paid contributions as identified on the Wolf Audit and the Summary Report. Thus, at the time the Wolf Audit issued, Company owed $1,885.90 in liquidated damages (assessed on the audit findings), $11,989.79 in accumulated liquidated damages (assessed for untimely payments made by the date issued) and $4,292.70 in accumulated interest (See Exhibit B, true and accurate copy of the Wolf Audit and Summary).

23. Additionally, under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Company is liable for the costs of any audit which reveals unpaid contributions. Accordingly, Company owes the Funds $1,575.00 in audit costs for the Wolf Audit (See Exhibits B, Summary).

24. Company's actions in failing to pay the amounts found owed per the Wolf Audit violate the Agreement.

25. Company's actions in failing to pay the amounts found owed per the Wolf Audit violate Section 515 of ERISA, 29 U.S.C. §1145 and Section 301 of the LMRA.

26. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds'

respective Trust Agreements, Company is liable to the Funds for delinquent contributions, liquidated damages, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendant T CAT Enterprise, Inc.:

a. ordering Company to submit its payment for the amounts owed per the Wolf Audit, covering the audit period of May 5, 2021 through March 31, 2022;

b. entering judgment in sum certain in favor of the Funds and against Company on the amounts due and owing per the Wolf Audit for the audit period of May 5, 2021 through March 31, 2022 including contributions, interest, liquidated damages, audit costs and Plaintiffs' reasonable attorneys' fees and costs;

c. ordering Company to obtain and maintain a surety bond in accordance with the terms of the Agreement; and

d. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

**COUNT II**
**(Failure to Turnover Dues per the Wolf Audit)**

27. Plaintiffs reallege paragraphs 1 through 26 as if fully set forth herein.

28. Notwithstanding the obligations imposed by the Agreements, Company failed to turnover $721.13 in Union dues that was, or should have been, deducted from the gross pay of covered workers and that is owed per the Wolf Audit, covering the audit period of May 5, 2021 through March 31, 2022, depriving the Union of those dues amounts and the information of correctly reporting the amounts owed.

29. Pursuant to the Agreements, Company owes liquidated damages at the rate of 10%

on all unpaid dues. Such that Company owes $72.11 on the amounts found owed for dues from the Wolf Audit.

30. Pursuant to the Agreement, Company is liable to the Funds for any unpaid union dues revealed by the audit, plus the assessed liquidated damages, audit costs and the reasonable attorneys' fees and costs of the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant T CAT Enterprises, Inc.:

a. entering judgment in sum certain in favor of the Funds and against Company on the amounts due and owing pursuant to the Wolf Audit, covering the audit period of May 5, 2021 through March 31, 2022, including dues, liquidated damages, accumulated liquidated damages, interest, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

b. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

**COUNT III**
**(Failure to Timely Report and/or Pay Employee Benefit Contributions)**

31. Plaintiffs reallege paragraphs 1 through 30 as fully set forth herein.

32. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Company performed covered work during the months of April 2022 to present, as reflected by Company's submitted but as yet unpaid reports to the Funds for hours of covered work performed in February 2025 and March 2025, and as per Company's own reports to the Funds and that Company is continuing to perform covered work to date of this filing, but Company has:

(a) failed to pay those monthly contributions owed to Plaintiff Chicago & Vicinity

Laborers' District Council's Pension Fund for the months of February 2025 to present, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer that Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to submit reports and/or pay those contributions owed to Plaintiff Chicago & Vicinity Laborers' Welfare Fund for the months of February 2025 to present, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to pay those contributions owed to Plaintiff Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Fund for the months of February 2025 to present, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d) failed to pay those contributions owed to Laborers' Training Fund for the months of February 2025 to present, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries; and

(e) failed to pay those contributions owed to LECET, LDCLMMC and CAICA funds for the months of February 2025 to present, thereby depriving those Ancillary Funds of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries.

33. The Company's actions in failing to timely submit reports and/or pay its contributions violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185, and federal common law interpreting ERISA, 29 U.S.C. §1132 (g)(2).

34. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, the Company is liable to the Funds for delinquent contributions, liquidated damages, interest, audit costs, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

35. Company's February 2025 and March 2025 monthly reports that were submitted but as yet are unpaid, reflect Company attests it owes $11,372.80 in principal benefit contributions, and thus owes $2,274.56 in liquidated damages on that amount, and $13,215.49 in accumulated liquidated damages are owed to date, for other untimely paid monthly reports. Funds are further entitled to assess interest at the rate of twelve (12) percent from the date the amounts are marked untimely and until paid.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant T CAT Enterprise, Inc., as follows:

a. ordering T CAT Enterprise, Inc., to submit its monthly reports owed to present and to pay such amounts owed and to continue reporting and paying timely thereafter;

b. entering judgment in sum certain against T CAT Enterprise, Inc. on the amounts reflected owed to the Funds for the months of February 2025 to present, including contributions, liquidated damages, and the accumulated liquidated damages owed to date, plus the accumulated interest to be calculated on that amount and added to the award with Plaintiffs' reasonable attorneys' fees and costs;

c. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

LABORERS' PENSION FUND, et al.
By: /s/ Sara S. Schumann
*Associate Fund Counsel*

Sara S. Schumann
Associate Fund Counsel
Laborers' Pension and Welfare Funds
11465 W Cermak Rd.
Westchester, IL 60604
(312) 692-1497
SaraS@chilpwf.com

April 29, 2025



# CONSTRUCTION & GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-0209 • FAX: 630/655-8053

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between T-CAT Enterprise, Inc. ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 68, 75, 76, 152, 225, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. Recognition. In response to the Union's request for recognition as the majority representative of its unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA for the employees now and hereinafter employed under this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its bargaining rights to any entity for purposes of multi-employer bargaining, and it hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association for purposes of multi-employer bargaining without prior written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement and all extensions hereof, and it waives any right or defenses it may have to terminate this agreement or refuse to negotiate a successor agreement based upon the number of persons employed, and it consents to enforcement of this commitment directly through any tribunal or court of competent jurisdiction.

2. Labor Contract. The Employer affirms and adopts the applicable Collective Bargaining Agreement(s) as designated by the Union in its sole discretion between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Great Lakes Contractors Association, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. Total economic increase. The Employer shall pay its employees a total economic increase of $2.1? per hour effective June 1, 2017, $2.24 per hour effective June 1, 2018, $2.31 per hour effective June 1, 2019, and $2.39 per hour effective June 1, 2020, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2017, the minimum wage rate shall be $41.20 per hour.

4. Checkoff Deductions and Remittances. The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the tenth (10th) day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. Work Jurisdiction. This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. Subcontracting. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. Fringe Benefits. The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by its duly authorized agents at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, and acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. Contract Enforcement. All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. Successors. In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. Termination. This Agreement shall remain in full force and effect from June 1, 2017 (unless dated differently below) through May 31, 2021, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice, the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement. Notwithstanding the foregoing, the Union in its sole discretion may terminate this Agreement at any time upon written notice should the Employer fail to comply with its bonding obligations or if the Employer is a joint employer with or alter ego of another entity with an outstanding delinquency to the Union's affiliated fringe benefit funds.

11. Execution. The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile and electronic signatures on this Agreement as if they were the original signatures.

Dated: May 5, 20 21

ACCEPTED:
Laborers' Local Union No. 152

By: [signature]

CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: [signature]
James P. Connolly, Business Manager

By: [signature]
Charles LoVerde, Secretary-Treasurer

For Office Use Only: KCAICA

T-CAT Enterprise, Inc.
(Employer)

FEIN No. ____________

By: Jimmy Trumbull, President
(Print Name and Title)

[signature]
(Signature)

997 Reading Dr.
(Address)

Bartlett, IL 60103
(City, State and Zip Code)

630 330 6800
(Telephone)

Jtrumbull@tcatinc.com
(Email Address)



Exhibit A

**LABORERS' PENSION & WELFARE FUNDS**

1/17/25

REVISED
AUDIT

EMPLOYER T-CAT ENTERPRISES INC

CODE 035885

FOLLOWING ARE THE FIGURES OWED BY THE ABOVE MENTIONED CONTRACTOR AS A RESULT OF THE AUDIT.

| 5-5-21-3-31-22 | HOURS | WELFARE | RATE | RETIREE WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDCLMCC | RATE | CAICA | RATE | LECET | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ADDITIONAL HOURS | | | | | | | | | | | | | | | | | |
| 6-1-21-5-31-22 | 200.00 | 2,260.00 | 11.30 | 1,050.00 | 5.25 | 2,942.00 | 14.71 | 180.00 | 0.90 | 721.13 | 34.00 | 0.17 | 16.00 | 0.08 | 14.00 | 0.07 | 7,217.13 |
| 6-1-21-3-31-22 | 81.00 | 915.30 | 11.30 | 425.25 | 5.25 | 1,191.51 | 14.71 | 72.90 | 0.90 | | - | | - | | - | | 2,604.96 |
| MEN NOT REPORTED | | - | | - | | - | | - | | | - | | - | | - | | - |
| SUBTOTAL | 281.00 | 3,175.30 | | 1,475.25 | | 4,133.51 | | 252.90 | | 721.13 | 34.00 | | 16.00 | | 14.00 | | 9,822.09 |
| 10% LIQUIDATED DAMAGES | | | | | | | | | | 72.11 | 3.40 | | 1.60 | | 1.40 | | 78.51 |
| 20% LIQUIDATED DAMAGES | | 635.06 | | 295.05 | | 826.70 | | 50.58 | | | | | | | | | 1,807.39 |
| AUDIT COSTS | | 525.11 | | 524.95 | | 524.94 | | | | | | | | | | | 1,575.00 |
| ATTORNEY FEES | | 1,202.50 | | 801.50 | | 1,202.50 | | | | | | | | | | | 3,206.50 |
| ACCUM. LIQUIDATED DAMAGES | | 5,099.12 | | 2,355.80 | | 4,534.87 | | | | - | | | | | | | 11,989.79 |
| ACCUM. INTEREST | | 1,497.62 | | 695.80 | | 1,949.56 | | 119.28 | | | 16.17 | | 7.61 | | 6.66 | | 4,292.70 |
| TOTAL DUE | | 12,134.71 | | 6,148.35 | | 13,172.08 | | 422.76 | | 793.24 | 53.57 | | 25.21 | | 22.06 | | 32,771.98 |
| AUDIT LIQUIDATED DAMAGE REDUCTION FROM 20% TO 10% IF THE AUDIT IS PAID WITHIN 30 DAYS FROM THE DATE OF THE AUDIT COVER LETTER DATED: | | (317.53) | | (147.53) | | (413.35) | | (25.29) | | | | | (1.60) | | | | (905.30) |
| TOTAL DUE, IF PAID WITHIN 30 DAYS | | 11,817.18 | | 6,000.82 | | 12,758.73 | | 397.47 | | 793.24 | 53.57 | | 25.21 | | 22.06 | | 31,866.68 |

**Exhibit B**

# RICHARD J. WOLF AND COMPANY, INC.

Post Office Box 591
Palos Park, Illinois 60464
(708) 923-0909
Fax (708) 923-0910



January 14, 2025

Board of Trustees
Pension and Welfare Funds of Construction and General
Laborers' District Council of Chicago and Vicinity
11465 Cermak Road
Westchester, Illinois 60154

RE: T-Cat Enterprises Inc. (35885) - revision

We have applied certain procedures, as discussed below, to the payroll records of T-Cat Enterprises Inc., a contributing employer to the Pension and Welfare Funds of Construction and General Laborers' District Council of Chicago and Vicinity, for the period May 5, 2021 to March 31, 2022. The purpose of our inspection was to determine the accuracy of the employer's monthly contributions to the Trust Funds for the given period. The accuracy of the payroll records and reporting to the Funds is the responsibility of the [Employer].

The exceptions to employer contributions noted are detailed on the accompanying schedule. This was not a review of amounts owed for withdrawal liability under the Multi-employer Pension Plan Amendments Act.

| FUND | AMOUNT |
|---|---|
| WELFARE | $ 3,175.30 |
| RET WELFARE | $ 1,475.25 |
| PENSION | $ 4,133.51 |
| TRAINING | $ 252.90 |
| LECET | $ 14.00 |
| LMCC | $ 34.00 |
| CAICA | $ 16.00 |
| DUES | $ 721.13 |
| Sub Total | $ 9,822.09 |
| Laborers' Pension and Welfare Funds – Accumulated LD's | $11,989.79 |
| TOTAL | $21,811.88 |

We have also examined the employer's current wage and fringe benefit bond by The Gray Insurance Co., in the amount of $5,000.00 covering the period from 6/10/2021 through 6/10/2022.

The Scope of this engagement was limited to records made available by the employer and would not necessarily disclose all exceptions in employer contributions to the Trust Funds. Any compensation paid to employees not disclosed to us or made part of the written records was not determinable by us and was not included in our review. Further, our procedures did not extend to any financial statements of the contributing employer and were substantially less in scope than an audit of the financial statements of the contributing employer, the objective of which is the expression of an opinion on the contributing employer's financial statements. Accordingly, no such opinion is expressed.

The findings of this audit report should not be construed as an endorsement or ratification of any of the Employer's contribution practices. The findings are based solely on those documents that the Employer provided to the auditors. This firm has not been retained to provide, and does not provide, any interpretation of advice concerning any terms of the collective bargaining agreement between the Employer and the Union of the terms of the Funds' respective Agreement and Declarations of Trust. All questions concerning the Employer's contribution practices, or any contributions or benefits-related issue, should be directed to the Union or the Fund office. No failure to note an exception to any of the employer's contribution practices should be construed as a ratification of such practice or waiver of the Union or the Funds' ability to challenge such practice in the future.

These findings are not based on observation of employees doing actual work.

RICHARD J. WOLF AND COMPANY, INC.

1/14/2025
JAP



LABORERS DISTRICT COUNCIL OF CHICAGO – CAICA ASSOCIATION

T-CAT ENTERPRISE INC #35885

*YEAR: 6/21 to 5/22*

*ADDITIONAL HOURS and/or WORK DUES 6/21 - 5/22*

| S. S. # | Flags | Type | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BRANKEY, CHRISTOPHER | # | Hours | - | 200.00 | - | - | - | - | - | - | - | - | - | - | 200.00 |
| XXX-XX-XXXX | | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | | Gross $ | - | 19,230.00 | - | - | - | - | - | - | - | - | - | - | $ 19,230.00 |

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL HOURS | - | 200.00 | - | - | - | - | - | - | - | - | - | - | 200.00 |
| TOTAL GROSS $ | $ - | $ 19,230.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 19,230.00 |

| Amount Due To Funds: | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WELFARE | $ - | $ 2,260.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 2,260.00 |
| RET WELFARE | $ - | $ 1,050.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,050.00 |
| PENSION | $ - | $ 2,942.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 2,942.00 |
| TRAINING | $ - | $ 180.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 180.00 |
| LECET | $ - | $ 14.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 14.00 |
| LMCC | $ - | $ 34.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 34.00 |
| CAICA | $ - | $ 16.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 16.00 |
| DUES | $ - | $ 721.13 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 721.13 |
| TOTAL | $ - | $ 7,217.13 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 7,217.13 |

| Rates: | 6/1/21 | to | 5/31/22 |
|---|---|---|---|
| WELFARE | 11.30 | LMCC | 0.17 |
| PENSION | 14.71 | CAICA | 0.08 |
| TRAINING | 0.90 | DUES | 3.75% |
| LECET | 0.07 | RET WEL | 5.25 |
| SCALE | 45.90 | | |

Case: 1:25-cv-04665 Document #: 1 Filed: 04/29/25 Page 18 of 21 PageID #:18

1/14/2025
JAP



LABORERS DISTRICT COUNCIL OF CHICAGO – CAICA ASSOCIATION

T-CAT ENTERPRISE INC #35885

***YEAR: 6/21 to 5/22***

***ADDITIONAL HOURS - WELFARE - RET WELFARE - PENSION - TRAINING 6/21 - 5/22***

| S. S. # | Flags | Type | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BRANKEY, CHRISTOPHER | # | Hours | - | - | 40.50 | - | - | - | - | - | - | - | - | - | 40.50 |
| XXX-XX-XXXX | | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | | Gross $ | - | - | - | - | - | - | - | - | - | - | - | - | $ - |
| KAZUMURA, JEFFERY | # | Hours | - | - | 40.50 | - | - | - | - | - | - | - | - | - | 40.50 |
| XXX-XX-XXXX | | | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | | Gross $ | - | - | - | - | - | - | - | - | - | - | - | - | $ - |

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL HOURS | - | - | 81.00 | - | - | - | - | - | - | - | - | - | 81.00 |
| TOTAL GROSS $ | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

| Amount Due To Funds: | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WELFARE | $ - | $ - | $ 915.30 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 915.30 |
| RET WELFARE | $ - | $ - | $ 425.25 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 425.25 |
| PENSION | $ - | $ - | $ 1,191.51 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,191.51 |
| TRAINING | $ - | $ - | $ 72.90 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 72.90 |
| TOTAL | $ - | $ - | $ 2,604.96 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 2,604.96 |

| Rates: | 6/1/21 | to | 5/31/22 |
|---|---|---|---|
| WELFARE | 11.30 | | |
| PENSION | 14.71 | | |
| TRAINING | 0.90 | | |
| | | RET WEL | 5.25 |
| SCALE | 45.90 | | |

LABORERS DISTRICT COUNCIL OF CHICAGO -- CAICA ASSOCIATION

T-CAT ENTERPRISE INC #35885

RICHARD J. WOLF AND COMPANY, INC.

## SUMMARY REPORT TOTAL

| | ADDITIONAL | UNREPORTED | TOTAL |
|---|---|---|---|
| WELFARE | $ 3,175.30 | $ - | $ 3,175.30 |
| RET WELFARE | $ 1,475.25 | $ - | $ 1,475.25 |
| PENSION | $ 4,133.51 | $ - | $ 4,133.51 |
| TRAINING | $ 252.90 | $ - | $ 252.90 |
| LECET | $ 14.00 | $ - | $ 14.00 |
| LMCC | $ 34.00 | $ - | $ 34.00 |
| CAICA | $ 16.00 | $ - | $ 16.00 |
| DUES | $ 721.13 | $ - | $ 721.13 |
| TOTAL | $ 9,822.09 | $ - | $ 9,822.09 |

# AUDIT COST – Laborers Pension & Welfare Funds

## T-CAT Enterprise Inc. (35885)

| Date billed | Amount |
| --- | --- |
| 9/27/23 | $1,365.00 |
| 1/14/25 (revision) | $ 210.00 |




# RICHARD J. WOLF AND COMPANY, INC.

Post Office Box 591
Palos Park, Illinois 60464
(708) 923-0909
Fax (708) 923-0910



September 27, 2023

Construction & General Laborers'
District Council & Chicago & Vicinity

RE: T-Cat Enterprises Inc. (35885)

Amount due for services rendered and expenses incurred in connection with the wage audit of T-Cat Enterprises Inc., for the period from May 5, 2021 through March 31, 2022.

Audit Cost $420.00

RICHARD J. WOLF AND COMPANY, INC.